**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 14-61698-CIV-GAYLES

LOUIS VUITTON MALLETIER, S.A.,

       Plaintiff,

vs.

2013LVSHOP.COM, *et al.*,

       Defendants.

_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

      Plaintiff, Louis Vuitton Malletier, S.A. ("Louis Vuitton"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and, upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Partnerships and Unincorporated Associations Identified on Schedule "A" hereto and Does 1-10 (collectively "Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C §1651(a). In support thereof, Louis Vuitton submits the following Memorandum of Law.

**I.**    **INTRODUCTION**

      As alleged in Louis Vuitton's Complaint, Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale and selling goods bearing counterfeits of Louis Vuitton's trademarks within this district and throughout the United States, through various fully interactive commercial Internet websites operating under their partnership and/or unincorporated association names identified on Schedule "A" hereto (the "Subject Domain Names"). [1]

_____

[1] The Internet websites operating under the Subject Domain Names louisvuittonfre.com (Defendant Number 49) and saclouisvuittonfrancee.com (Defendant Number 123) identified in Louis Vuitton's Complaint were operational at the time Louis Vuitton conducted its initial investigation of Defendants. However, the websites operating under those domain names are currently not operational. Accordingly, Louis Vuitton is not requesting immediate equitable relief as to the Internet websites operating the domain names saclouisvuittonfrancee.com and louisvuittonfre.com. (See Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ¶ 2 n.1.)

Defendants' unlawful activities have caused and will continue to cause irreparable injury to Louis Vuitton. Among other things, Defendants have (1) deprived Louis Vuitton of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking their goods are valuable, authorized goods of Louis Vuitton; (3) deceived the public as to Louis Vuitton's sponsorship of and/or association with their goods and the websites through which such goods are marketed and sold; and (4) wrongfully traded and capitalized on Louis Vuitton's reputation and goodwill and the commercial value of Louis Vuitton's trademarks.

Moreover, Defendants have wrongfully damaged Louis Vuitton's ability to market its goods and educate consumers about its brand via the Internet in a free and fair marketplace and have participated in the creation and/or maintenance of an illegal marketplace on the World Wide Web, the purposes of which were to (i) confuse consumers regarding the source of Defendants' goods for profit, and (ii) expand the marketplace for illegal, counterfeit Louis Vuitton branded goods while shrinking the legitimate marketplace for genuine Louis Vuitton branded goods. The natural and intended byproduct of Defendants' actions is the erosion of the overall legitimate marketplace in which Louis Vuitton operates and the goodwill associated with the Louis Vuitton name. Defendants should not be permitted to continue their unlawful activities, which are causing Louis Vuitton ongoing irreparable harm. According, Louis Vuitton seeks entry of a temporary restraining order (i) prohibiting Defendants' wrongful use of the Louis Vuitton trademarks, and (ii) disabling Defendants' websites operating under the Subject Domain Names.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights

Louis Vuitton is the owner of all rights in and to the federally registered trademarks listed in Paragraph 4 of the Declaration of Hadrien Huet in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Louis Vuitton Marks") which are used in connection with the manufacture and distribution of high quality goods in the categories identified therein. (See Declaration of Hadrien Huet in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Huet Decl."] ¶¶ 4-5, filed herewith; see also United States Trademark Registrations for the Louis Vuitton Marks at issue ["Louis Vuitton Trademark Registrations"] attached as Comp. Ex. A to the Huet Decl.) The Louis Vuitton Marks are symbols of Louis Vuitton's

quality, reputation, and goodwill and have never been abandoned. (See Huet Decl. ¶ 7.) Louis Vuitton has expended substantial time, money, and resources developing, advertising, and otherwise promoting its trademarks. (See id. at ¶¶ 6-7.) Accordingly, the Louis Vuitton Marks are famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Furthermore, Louis Vuitton has extensively used, advertised, and promoted the Louis Vuitton Marks in the United States in association with high quality luxury goods and has carefully monitored and policed the use of the Louis Vuitton Marks. (See Huet Decl. ¶¶ 6-7.) At all times relevant hereto, Defendants have been aware of Louis Vuitton's (a) ownership of the Louis Vuitton Marks; (b) exclusive rights to use and license such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Louis Vuitton Marks.

**B.    Defendants Wrongfully Use Plaintiff's Trademarks in Connection With the Promotion and Sale of Counterfeit Branded Goods.**

Defendants do not have, nor have they ever had, the right or authority to use the Louis Vuitton Marks for any purpose. (See Huet Decl. ¶ 9.) However, despite their known lack of authority to do so, Defendants have been promoting and otherwise advertising, distributing, selling and/or offering for sale goods bearing counterfeit and infringing marks which are substantially indistinguishable from and/or colorable imitations of the registered Louis Vuitton Marks ("Defendants' Goods"). (See Huet Decl. ¶¶ 9-12; Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Gaffigan Decl."] ¶ 2, and Comp. Ex. A attached thereto, relevant web page captures from Defendants' Internet websites operating under the Subject Domain Names displaying the Louis Vuitton branded items offered for sale ["Defendants' Websites"].) Given Defendants' copying of the Louis Vuitton Marks, genuine goods bearing the Louis Vuitton Marks and the Defendants' Goods are indistinguishable to consumers. Louis Vuitton's representative, Hadrien Huet, reviewed and visually inspected Defendants' Websites, as well as the items bearing the Louis Vuitton Marks offered for sale by Defendants via the Internet websites operating under the relevant Subject Domain Names, and determined the products were non-genuine. (See Huet Decl. ¶¶ 10-12.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks which are slightly modified from the registered marks copied are to be considered counterfeit marks. See

Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the Louis Vuitton Marks at issue to the marks used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit nature of Defendants' Goods. (Compare Louis Vuitton's Trademarks Registrations [Comp. Ex. A to the Huet Decl.] with Defendants' Websites [Comp. Ex. A to the Gaffigan Decl.]). Defendants' Goods bearing counterfeits of the Louis Vuitton Marks are being promoted, offered for sale and sold by Defendants to consumers in this District. (Huet Decl. ¶¶ 9-12 and Comp. Ex. B thereto, examples of Defendants' infringement of the Louis Vuitton Marks; see Comp. Ex. A attached to the Gaffigan Decl., Defendants' Websites.) Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them through the sale of worthless counterfeit and infringing branded goods. Defendants are also falsely representing to consumers and the trade that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Louis Vuitton. Ultimately, Defendants' Internet websites amount to nothing more than illegal operations infringing on the intellectual property rights of Louis Vuitton and others. The Subject Domain Names are used as common names of Defendants and are themselves a substantial part of the means by which Defendants further their scheme and cause harm to Louis Vuitton.

**C.    Defendants Unfairly Compete with Plaintiff Through Search Engine Optimization Using Counterfeits of Plaintiff's Trademarks.**

Genuine Louis Vuitton branded goods are widely legitimately promoted, offered for sale and discussed by Louis Vuitton and unrelated third parties via the Internet. (Huet Decl. ¶ 13.) Over the course of the past five years, visibility on the World Wide Web, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Louis Vuitton's overall marketing and consumer education efforts. (Id. at ¶ 14.) Thus, Louis Vuitton expends significant monetary resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO") strategies, which allow Louis Vuitton and others to fairly educate consumers about the value associated with the Louis Vuitton brand and the goods sold thereunder. (Id.)

SEO is a now common marketing process whereby a company or individual legitimately designs, supports, structures, and phrases Internet website content in order to enhance a website's profile for search engines over a variety of search terms. SEO essentially describes the process of steps taken by a website owner to ensure that the owner's website appears in the results returned

by an Internet search engine such as Google, Yahoo!, or Bing. According to one estimate, in 2012, advertisers in the United States spent over nineteen billion dollars on advertising with search engines, [2] reflecting the sheer economic power of the industry. As a result, the SEO industry has arisen to assist website owners in improving their rankings in search engine results, thereby essentially securing search engines' role as a gatekeeper and driver of the online economy. [3]

The rise of the importance of SEO marketing practices and the value of high visibility on the World Wide Web have not been lost on those engaged in the illegal business of selling counterfeit branded goods, such as Defendants herein and their coconspirators. Counterfeiters and infringers, such as Defendants, have embraced the SEO concept and are concurrently leveraging it to cause greater and more significant harm to brand owners, including Louis Vuitton. Defendants have helped create and participate in an illegal marketplace enterprise operating parallel to the legitimate marketplace for genuine Louis Vuitton goods. Through their combined actions, Defendants are causing concurrent and indivisible harm to Louis Vuitton and the consuming public by (i) depriving Louis Vuitton and other third parties of the ability to fairly compete for space within search engine results, (ii) causing an overall degradation of the value of the goodwill associated with the Louis Vuitton Marks, (iii) increasing Louis Vuitton's overall cost to market its goods and educate consumers about the brand via the World Wide Web and (iv) creating and maintaining an illegal marketplace using the World Wide Web which perpetuates the ability of Defendants and their coconspirators to confuse consumers and harm Louis Vuitton with impunity. (Huet Decl. ¶¶ 13-16.)

Defendants, each of whom is aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions in order to cause concurrent and indivisible harm to Louis Vuitton and consumers. (See id.) By engaging in SEO and other market building strategies based upon an illegal use of the Louis Vuitton Marks, Defendants are obliterating the otherwise open and available marketplace space on the World

---

[2] Mike King, Almost $20 Billion Spent on Search Engine Marketing by the US in 2012, Companies & Markets, (March 7, 2013), http://www.companiesandmarkets.com/News/Information-Technology/Almost-20-billion-spent-on-search-engine-marketing-by-the-US-in-2012/NI6711.

[3] Viva R. Moffat, Regulating Search, 22 Harv. J.L. & Tech. 475, 481-82 (Spring, 2009) (footnotes omitted).

Wide Web in which Louis Vuitton has the right to fairly market its goods and associated message. Specifically, at a minimum, Defendants use unauthorized counterfeits and infringements of Louis Vuitton's name and trademarks within the content, anchor text and/or meta tags of their websites in order to attract the automated eye of various search engines crawling the Internet looking for websites relevant to consumer searches for Louis Vuitton related goods and information. (See id. at ¶ 15.) Meaningful space on the World Wide Web, including search engine results page space, is akin to real estate – there is only so much of it available. Thus, website operators such as Louis Vuitton and Defendants spend substantial sums of money incorporating concepts and popular search terms, such as the Louis Vuitton Marks, into their on-site and off-site content in order to promote visibility on the World Wide Web and be seen by search engines and returned as part of relevant search results across an array of search phrases. (See id. at ¶¶ 14-16.) The primary difference between what Louis Vuitton and Defendants are doing, of course, is that Louis Vuitton is doing so through the legal use of its trademarks in which it has made substantial economic investment, and Defendants are doing so through subterfuge and illegal behavior, including counterfeiting of the Louis Vuitton Marks and conspiring to create and maintain an illegal marketplace via which they sell their illicit goods and confuse consumers.

        For purposes of this Application, Louis Vuitton does not contend that it or any other third party has the exclusive right to appear in any particular location in the results of any search engine across any particular array of search terms; however, Louis Vuitton does contend that it has the right to fairly compete for visibility on the World Wide Web and search engine results space unfettered by unfair competition stemming from an illegal use of Louis Vuitton's trademarks. Louis Vuitton's right to fairly compete for the best Internet real estate and its reputation are being trampled by the combined efforts of Defendants. Louis Vuitton, its trademark rights, and associated goodwill are suffering death by 1,000 cuts. While each Defendant's actions alone cause harm to Louis Vuitton, the combined force and effect of all of Defendants' actions is creating an entirely illegal marketplace and causing the single indivisible harm of the erosion of the goodwill associated with the Louis Vuitton Marks and the denial of Louis Vuitton's right to fairly compete for visibility on the World Wide Web, including within search engine results.

III.   <u>ARGUMENT</u>

    A.    **A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

Louis Vuitton is seeking entry of a temporary restraining order (i) prohibiting Defendants' further wrongful use of the Louis Vuitton Marks and (ii) disabling Defendants' websites operating under the Subject Domain Names during the pendency of this action. The requested relief is necessary to immediately stop Defendants' ongoing, intentional confusion of consumers and the associated irreparable harm occurring to Louis Vuitton.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Moreover, temporary restraining orders are available on an *ex parte* basis if the movant shows through an affidavit that there is a threat of intervening immediate, irreparable harm before the adverse party may be heard in opposition and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b). (<u>See</u> Gaffigan Decl. ¶¶ 3-6, filed herewith, and Comp. Ex. C attached thereto, examples of website redirections.) As demonstrated herein, such irreparable and immediate injury will result to Louis Vuitton if Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendants fraudulently offer to sell and sell goods bearing counterfeits and infringements of the Louis Vuitton Marks via the Internet websites operating under, at least, the Subject Domain Names. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Louis Vuitton. Specifically, Defendants are wrongfully using counterfeits and infringements of the Louis Vuitton Marks to promote and attract customers to their website businesses and to expand their illegal marketplace. Counterfeits and infringements of the Louis Vuitton Marks are being used by Defendants to increase traffic to their illegal businesses which offer consumers a variety of counterfeit and infringing goods, including Louis Vuitton branded goods. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Louis Vuitton Marks and would preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate. <u>Dell Inc. v. BelgiumDomains, LLC</u>, Case No. 07-

22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.").

Absent a temporary restraining order, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights. Specifically, the Internet websites at issue are under the complete control of Defendants, and they have the ability to modify registration data and content, change hosts and, most importantly, redirect traffic to other websites they control. (Gaffigan Decl. ¶¶ 3-4.) Moreover, Defendants operate Internet websites, which they optimize for the sale of counterfeit and infringing Louis Vuitton branded merchandise. The optimization process provides Defendants with their power to unfairly compete with Louis Vuitton by catapulting their illegal websites into top search engine results. All of that optimization power, built through the illegal use of the Louis Vuitton Marks, can easily be transferred to a new domain name in a matter of minutes through what is known as a redirect. (See id. at ¶¶ 3-5.) Essentially, Defendants could use a redirect to push traffic from the Subject Domain Names to new domains not yet identified. (See id.) The result would be to slingshot the new domains to the top of the search engine results pages by leveraging the Internet traffic to the domains in suit, which was built through the illegal use of the Louis Vuitton Marks. (See id. at ¶¶ 3-6 and Comp. Ex. C attached thereto, examples of redirections.) In short, Defendants would completely erase the status quo by transferring all of the benefits of their prior illegal activities to new websites. (See id.)

Federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Time Warner Enter. Co. v. Does #1-2, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) (compiling cases and noting, "[w]here plaintiffs have shown that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant *ex parte* orders under either the Lanham Act or the Copyright Act.").[4] This Court should prevent an injustice from occurring by issuing a

---

[4] See also Abercrombie & Fitch Trading Co. v. 7starzone.com, NO. 14-60087-CIV, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); Adidas AG v. adidas2013online.com, NO. 13–24398–CIV, 2013 WL 6667043 (S.D. Fla. Dec. 17, 2013) (same); Mycoskie, LLC v. authentictomsshoes.com, NO. 13–62514–CIV, 2013 WL 6229140 (S.D. Fla. Dec. 2, 2013) (same); Adidas AG v. 2013jeremyscottxadidas.com, NO. 13-61867-CIV, 2013 WL 5306704 (S.D. Fla. Sept.19, 2013)

temporary restraining order which precludes Defendants from continuing to display their infringing content via the websites operating under the Subject Domain Names and which, after allowing an opportunity for objections, temporarily places control of the websites in the hands of the Court. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

  **B.**  **Standard for Temporary Restraining Order and Preliminary Injunction.**

  In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Louis Vuitton's evidence establishes all of the relevant factors. Accordingly, preliminary injunctive relief is appropriate.

  **1.**  **Probability of Success on the Merits of Plaintiff's Claims.**

  **a)**  **Likelihood of Success on Counterfeiting Claim.**

  Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." Louis Vuitton must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the marks is without Louis Vuitton's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1). Louis Vuitton's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

---

(same); Acushnet Co. v. onlinegolfsale.us, NO. 13-61895-CIV, 2013 WL 5211853 (S.D. Fla. Sept. 13, 2013) (same); adidas AG v. adidascrazylight2.com, NO. 13-21230-CIV, 2013 WL 1651731 (S.D. Fla. April 16, 2013) (same); Louis Vuitton Malletier, S.A. v. 100wholesale.com, NO. 12-21778-CIV, 2012 WL 3260354 (S.D. Fla. Aug. 08, 2012) (same).

The first two elements of Louis Vuitton's trademark counterfeiting and infringement claims are easily met. The Louis Vuitton Marks are owned by Louis Vuitton and registered on the Principal Register of the United States Patent and Trademark Office, and all but one of the Louis Vuitton Marks have become "incontestable" under 15 U.S.C. §§ 1058 and 1065.[5] (See Huet Decl. ¶ 4 and Comp. Ex. A thereto, Louis Vuitton Trademark Registrations.) See also Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). Moreover, Defendants have never had the right or authority to use the Louis Vuitton Marks. (Huet Decl. ¶¶ 9-10.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). The factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.)

(1)    <strong>Strength of the Marks.</strong>

The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.) It cannot be seriously disputed that the Louis Vuitton Marks are strong, arbitrary, and fanciful marks.

The Louis Vuitton Marks have also acquired secondary meaning. Louis Vuitton has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Louis Vuitton Marks. (Huet Decl. ¶¶ 6-7.) The Louis Vuitton Marks enjoy widespread recognition and are prominent in the minds of consumers. (Id.)

---

[5] Trademark Registration 4,192,541 is not incontestable.

(2)      **Similarity of the Marks.**

Likelihood of confusion is greater when an infringer uses the exact trademark. <u>Turner Greenberg Assocs. v. C & C Imps.</u>, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Defendants are using marks which are identical to the Louis Vuitton Marks. (<u>Compare</u> Louis Vuitton's Trademarks Registrations [Comp. Ex. A to Huet Decl.] <u>with</u> Defendants' Websites [Comp. Ex. A to the Gaffigan Decl.].)

(3)      **Similarity of the Goods.**

"The greater the similarity between the products and services, the greater the likelihood of confusion." <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Louis Vuitton sells. (Huet Decl. ¶¶ 5, 9-12; <u>see generally</u> Defendants' Websites attached as Comp. Ex. A to the Gaffigan Decl.) Because they bear counterfeits of the Louis Vuitton Marks, Defendants' Goods appear virtually identical to Louis Vuitton's genuine products in the consumer market. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. <u>See</u> <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 976 (11th Cir. 1983).

(4)      **Similarity of Sales Method and (5) Advertising Method.**

Convergent marketing channels increase the likelihood of confusion. <u>See</u> <u>Turner Greenberg Assocs.</u>, 320 F. Supp. 2d at 1332. Both Louis Vuitton and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical areas. (Huet Decl. ¶¶ 9-12; <u>see generally</u> Defendants' Websites attached as Comp. Ex. A to the Gaffigan Decl.) Thus, the conditions of purchase for both parties are unmistakably identical, and Louis Vuitton is directly competing with Defendants' products.

**(6)      Defendants' Intent.**

It has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" <u>Turner Greenberg Assocs.</u>, 320 F. Supp. 2d at 1333, <u>citing</u> <u>Carnival Corp. v. Seaescape Casino Cruises, Inc.</u>, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999). In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Louis Vuitton's reputation, to the detriment of Louis Vuitton. <u>See</u> <u>Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Fl</u>, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

(5)      **Evidence of Actual Confusion.**

Actual confusion is unnecessary to establish infringement, since, the test is likelihood of confusion. See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Louis Vuitton. (Huet Decl. ¶¶ 9-12; see generally Defendants' Websites attached as Comp. Ex. A to the Gaffigan Decl.) Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Louis Vuitton Marks which undeniably creates the impression they are viewing genuine goods sold or authorized by Louis Vuitton. Such post-sale confusion is entirely actionable. See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The above seven factors weigh only in Louis Vuitton's favor. Louis Vuitton has therefore shown a probability of success on the merits of its trademark counterfeiting claim.

**b)      Likelihood of Success on False Designation of Origin Claim.**

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). Whether the violation is called infringement, unfair competition or false designation of origin, the test is identical -- is there a "likelihood of confusion?" Id. Therefore, because Louis Vuitton has established the merits of its trademark counterfeiting and infringement claim against Defendants, a likelihood of success is also shown as to Louis Vuitton's second claim for false designation of origin.

**c)      Likelihood of Success on Cybersquatting Claim.**

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties.

12

15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Louis Vuitton must prove that (1) the Louis Vuitton Marks are distinctive or famous and entitled to protection; (2) Defendants' domain names are identical or confusingly similar to the Louis Vuitton Marks; and (3) Defendants registered or used the domain names with a bad faith intent to profit. Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006). The evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1125(d).

Several Defendants have registered domain names which incorporate, at least, one of the Louis Vuitton Marks in its entirety surrounded by descriptive or generic terms, rendering the marks nearly identical as compared to the Louis Vuitton Marks (the "Infringing Subject Domain Names.")[6] See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law."). Moreover, Courts have found that even slight differences between a domain name and a registered mark, such as the addition of minor or generic words to the disputed domain name, is irrelevant. See Ford Motor Co. v. Greatdomains.Com, Inc., 177 F. Supp. 2d 635, 642 (E.D. Mich. 2001) (holding "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally will suffice.").

The ACPA lists nine nonexclusive factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); see also Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1346. The nine factors are not meant to be exclusive and the Court may consider all relevant factors in making a determination of bad faith. Id. at 1347. Ultimately, each factor addresses whether "the defendant's use of the disputed domain name is legitimate – i.e., for some purpose other than simply to profit from the value of the trademark." Ford Motor Co., 177 F. Supp. 2d at 642. An examination of the bad faith factors compels the conclusion that Defendants' registration and use of the Infringing Subject Domain Names violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendants have no rights in the Louis Vuitton Marks and Defendants have never used those

---

[6] See Compl. ¶ 36.

13

Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V), (IX), weigh in Louis Vuitton's favor. As discussed above, each of the Defendants have clearly intentionally incorporated the Louis Vuitton Marks in multiple domain names to divert consumers looking for Louis Vuitton's Internet websites to their own Internet websites for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of Defendants' Internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Louis Vuitton. This is especially true in light of the fact that the Internet websites are offering for sale counterfeit Louis Vuitton branded goods. Clearly, Defendants registration of the Infringing Subject Domain Names in order to sell and offer for sale counterfeit and infringing Louis Vuitton branded goods, knowing the domain names are identical or confusingly similar to Louis Vuitton's indisputably famous and distinctive marks, ensures a likelihood of confusion among consumers. See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act."). Thus, Louis Vuitton has shown a likelihood of success on the merits of its cybersquatting claim.

### d)     Likelihood of Success on Common Law Unfair Competition Claim.

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983.)") Louis Vuitton has established there is a likelihood of confusion regarding Defendants' use of the Louis Vuitton Marks on their counterfeit and infringing products. Accordingly, Louis Vuitton is also likely to succeed on the merits of its common law unfair competition claim.

### 2.     Plaintiff is Suffering Irreparable Injury.

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180,

191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of the defendant's activities. Id. A likelihood of confusion exists herein because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the Louis Vuitton Marks.

### 3. The Balance of Hardship Tips Sharply in Plaintiff's Favor.

Louis Vuitton has expended substantial money and other resources to develop the reputation, and goodwill associated with the Louis Vuitton Marks. (Huet Decl. ¶¶ 6-7.) Should Defendants be permitted to continue their trade in counterfeit goods, Louis Vuitton will suffer losses and damage to its reputation. (See id. at ¶ 16.) However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present activities.

### 4. The Relief Sought Serves the Public Interest.

The public has an interest in not being misled as to the origin of trademarked products. Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

### C. The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### 1. Entry of an Order Immediately Enjoining Defendants' Unauthorized Use of Plaintiff's Trademarks is Appropriate.

Louis Vuitton requests an order requiring Defendants immediately cease all use of the Louis Vuitton Marks, or substantially similar marks, including on or in connection with all Internet websites and domain names owned and operated, or controlled by them. Such relief is necessary to stop the ongoing harm to Louis Vuitton's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased traffic to their illegal website

operations created by their unlawful use of the Louis Vuitton Marks. Many courts have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks. [7]

    **2.**    **Entry of an Order Prohibiting Transfer of the Domain Names During the Pendency of this Action is Appropriate.**

       To preserve the status quo, Louis Vuitton seeks an order temporarily modifying control of and prohibiting Defendants from transferring the Subject Domain Names to other parties. Under the operating rules of domain name registrars, defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (Gaffigan Decl. ¶ 4.) Moreover, Defendants can modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief. (Id. at ¶¶ 4-7.) Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant such relief.[8] Here, an interim order prohibiting Defendants from transferring the Subject Domain Names poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Louis Vuitton full relief.

    **3.**    **Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate.**

       An interim order redirecting, transferring, disabling, or canceling the offending domain names is the only means of affording a plaintiff interim relief that avoids irreparable harm.

---

[7] See, e.g., Abercrombie & Fitch Trading Co. v. 7starzone.com, NO. 14-60087-CIV, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); Adidas AG v. adidas2013online.com, NO. 13-24398-CIV, 2013 WL 6667043 (S.D. Fla. Dec. 17, 2013) (same); Mycoskie, LLC v. authentictomsshoes.com, NO. 13-62514-CIV, 2013 WL 6229140 (S.D. Fla. Dec. 2, 2013) (same); Adidas AG v. 2013jeremyscottxadidas.com, NO. 13-61867-CIV, 2013 WL 5306704 (S.D. Fla. Sept.19, 2013) (same); Acushnet Co. v. onlinegolfsale.us, NO. 13-61895-CIV, 2013 WL 5211853 (S.D. Fla. Sept. 13, 2013) (same); adidas AG v. adidascrazylight2.com, NO. 13-21230-CIV, 2013 WL 1651731 (S.D. Fla. April 16, 2013) (same); Louis Vuitton Malletier, S.A. v. 100wholesale.com, NO. 12-21778-CIV, 2012 WL 3260354 (S.D. Fla. Aug. 08, 2012) (same).

[8] See, e.g., Abercrombie & Fitch Trading Co. v. 7starzone.com, NO. 14-60087-CIV, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014) (prohibiting Defendants from transferring domain names during pendency or until further Order of the Court); Adidas AG v. adidas2013online.com, NO. 13-24398-CIV, 2013 WL 6667043 (S.D. Fla. Dec. 17, 2013) (same); Mycoskie, LLC v. authentictomsshoes.com, NO. 13-62514-CIV, 2013 WL 6229140 (S.D. Fla. Dec. 2, 2013) (same); Adidas AG v. 2013jeremyscottxadidas.com, NO. 13-61867-CIV, 2013 WL 5306704 (S.D. Fla. Sept.19, 2013) (same); Acushnet Co. v. onlinegolfsale.us, NO. 13-61895-CIV, 2013 WL 5211853 (S.D. Fla. Sept. 13, 2013) (same); adidas AG v. adidascrazylight2.com, NO. 13-21230-CIV, 2013 WL 1651731 (S.D. Fla. April 16, 2013) (same); Louis Vuitton Malletier, S.A. v. 100wholesale.com, NO. 12-21778-CIV, 2012 WL 3260354 (S.D. Fla. Aug. 08, 2012) (same).

Accordingly, in order to disable and redirect the Subject Domain Names, Louis Vuitton requests the Court enter an order requiring the registrars and the registries which maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the Subject Domain Names to a holding account with a Registrar of Louis Vuitton's choosing where they will be held in trust for the Court during the pendency of this action and set to automatically redirect to http://servingnotice.com/lvserp12/index.html.[9] Upon such redirection, a copy of all of the pleadings, other documents and Court orders issued in this matter will be immediately visible to Defendants the moment they type any of their own domain names into their web browsers. The Subject Domain Names would serve as the single most effective means of notifying Defendants of the pendency of this action and the relief sought by Louis Vuitton and affording them and any other interested parties with an opportunity to object.

> **D.     A Bond Should Secure the Injunctive Relief.**

Because of the strong and unequivocal nature of Louis Vuitton's evidence of counterfeiting and infringement, false designation of origin, cybersquatting, and unfair competition, Louis Vuitton respectfully requests this Court require Louis Vuitton to post a bond of ten thousand dollars ($10,000.00) in favor of Defendants. The amount of posting of security

---

[9] Such relief regarding a change of registrars was granted in Abercrombie & Fitch Trading Co. v. 7starzone.com, NO. 14-60087-CIV, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014); Adidas AG v. adidas2013online.com, NO. 13–24398–CIV, 2013 WL 6667043 (S.D. Fla. Dec. 17, 2013); Mycoskie, LLC v. authentictomsshoes.com, NO. 13–62514–CIV, 2013 WL 6229140 (S.D. Fla. Dec. 2, 2013); Adidas AG v. 2013jeremyscottxadidas.com, NO. 13-61867-CIV, 2013 WL 5306704 (S.D. Fla. Sept.19, 2013); Acushnet Co. v. onlinegolfsale.us, NO. 13-61895-CIV, 2013 WL 5211853 (S.D. Fla. Sept. 13, 2013); Adidas AG v. adidascrazylight2.com, NO. 13-21230-CIV, 2013 WL 1651731 (S.D. Fla. April 16, 2013); Louis Vuitton Malletier, S.A. v. 100wholesale.com, NO. 12-21778-CIV, 2012 WL 3260354 (S.D. Fla. Aug. 08, 2012); Chanel, Inc. v. chanelbags360sale.com, 14-cv-61549-WPD (S.D. Fla. July 11, 2014); Chanel, Inc. v. chanel-bestsell.com, 14-cv-61366-WJZ (S.D. Fla. June 26, 2014); Gucci America, Inc. v. 2014watchmodels.com, 14-cv-61260-JEM (S.D. Fla. June 9, 2014); Tommy Hilfiger Licensing, LLC v. canadatommyhilfigeroutlet.com, 14-cv-60433-UU (S.D. Fla. Feb. 25, 2014); Tiffany (NJ), LLC v. besttiffanysale.com, 14-cv-60114-KMM (S.D. Fla. Jan. 23, 2014); Chanel, Inc. v. chanelbagshome.com, 13-cv-23570-PCH (S.D. Fla. Oct. 11, 2013); Tiffany (NJ), LLC v. 2103tiffanyaustralia.com, 13-cv-62053-KAM (S,D, Fla. Oct. 1, 2013); Acushnet v. onlinegolfsale.us, 13-cv-61895-JIC (S.D. Fla. Sept. 13, 2103); Chanel, Inc. v. sacpasschers.com, 13-cv-21843-JLK (S.D. Fla. June 5, 2013); Chanel, Inc. v. aaaluxurybelt.com, 13-cv-21684-JAL (S.D. Fla. May 30, 2013); S.A.S. Jean Cassegrain v. achatsaclongchamp.com, 13-cv-20579-DLG (S.D. Fla. April 11, 2013); Tiffany (NJ), LLC v. 1tiffanyjewelleryau.com, 12-cv-24478-KMW (S.D. Fla. Jan. 15, 2013); Louis Vuitton Malletier, S.A. v. Feng, 11-cv-60811-DMM (S.D. Fla. April 25, 2011). True and correct copies of unpublished Orders are attached as Composite Exhibit D to the Gaffigan Decl.

upon issuance of a temporary restraining order or permanent injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.   **CONCLUSION**

In view of the foregoing, Plaintiff, Louis Vuitton Malletier, S.A., respectfully requests this Court grant their ex parte application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for Preliminary Injunction before the expiration of the temporary restraining order.


DATED: July 27, 2014.                      Respectfully submitted,

                                           STEPHEN M. GAFFIGAN, P.A.

                                           By: _s:/*Virgilio Gigante*/_____
                                           Stephen M. Gaffigan (Fla. Bar No. 025844)
                                           Virgilio Gigante (Fla. Bar No. 082635)
                                           T. Raquel Rodriguez-Albizu (Fla. Bar No. 103372)
                                           401 East Las Olas Blvd., #130-453
                                           Ft. Lauderdale, Florida 33301
                                           Telephone: (954) 767-4819
                                           Facsimile: (954) 767-4821
                                           E-mail: stephen@smgpa.net
                                           E-mail: leo@smgpa.net
                                           E-mail: raquel@smgpa.net

                                           Attorneys for Louis Vuitton Malletier, S.A.

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Domain Name |
|---|---|
| 1 | 2013lvshop.com |
| 2 | 2013saclouissvuitton.com |
| 3 | aaa-louisvuitton.com |
| 3 | replicalouisvuitton-cheap.com |
| 3 | replicalouisvuitton-outlet.com |
| 3 | replicaslouis-vuitton.com |
| 4 | aollouisvuittonoutlets.com |
| 5 | authenticlouisvuittonhandbags.com |
| 6 | authenticlouisvuittonhandbags.org |
| 7 | bestlongchampbags.com |
| 8 | bolsoslouisvuittonbag.com |
| 9 | borsalouisvuitton-outlet.com |
| 10 | borselouisvuittonit.eu |
| 11 | borselouisvuittonsoutlet.eu |
| 12 | borseoutletonlineshop.com |
| 13 | buylouisvuittonbagsuk.info |
| 13 | lvbagsuksale.biz |
| 14 | cheap-louisvuitton.us |
| 15 | cheaplouisvuitton2014.us |
| 16 | eluxurylouis-vuitton.com |
| 17 | e-salelouis.com |
| 17 | esale-louisbag.com |
| 17 | esalelouisbags.com |
| 17 | esaleslouisbags.com |
| 17 | e-saleslouisbags.com |
| 18 | estorelouisvuitton.com |
| 19 | fantasylouisvuitton.com |
| 20 | genuinelv.com |
| 21 | genuinelvbag.com |
| 22 | hotlouisvuitton.com |
| 23 | ilouisvuittons.com |
| 24 | ilouisvuittonstore.com |
| 25 | italiaborselv2014.com |
| 26 | italia-louisvuitton.com |
| 27 | italianlvs.com |

| 28 | louisesvuittonus.org |
| 29 | louislouisvuittonvuitton.com |
| 30 | louissvuittonus.com |
| 31 | louisv-store.com |
| 32 | louis-vuitton.co |
| 33 | louisvuitton-2014.com |
| 34 | louisvuitton30.com |
| 35 | louisvuittonartsygm.com |
| 36 | louisvuittonauthentic.com |
| 37 | louisvuittonbags.cc |
| 38 | louisvuittonbags-2013.com |
| 39 | louisvuittonbagstyle.com |
| 39 | uslouisvuiton.com |
| 40 | louisvuittonbargain.com |
| 41 | louisvuittonbelgie.be |
| 42 | louisvuittonbolso.net |
| 43 | louisvuittonborseoutlet.com |
| 44 | louisvuittonboss.com |
| 44 | lvoutletukclassic.com |
| 45 | louisvuittoncanadaoutletstore.net |
| 46 | louisvuitton-es.es |
| 47 | louisvuittonfactorybuy.com |
| 48 | louisvuittonforcheapsale.com |
| 50 | louisvuittonfriday.com |
| 51 | louisvuittonhandbags0.com |
| 52 | louisvuitton-handbags3.com |
| 53 | louisvuittonhandbagssaks.com |
| 54 | louisvuitton-handbagsusa.com |
| 55 | louisvuitton-india.net |
| 56 | louisvuittoning.com |
| 57 | louisvuittoninstyle.com |
| 58 | louis-vuitton--lv.com |
| 58 | mylouisvuittonfashion.com |
| 59 | louisvuittonneverfulltote.com |
| 60 | louisvuittonofficialshop.com |
| 61 | louisvuittonokbuy.com |
| 62 | louisvuittononlinebusiness.com |
| 63 | louisvuittonoslonorge.com |
| 64 | louisvuittonoutlet.me.uk |

| 65  | louisvuittonoutlet.us |
| 66  | louisvuittonoutletbest.com |
| 67  | louisvuittonoutletdeals.com |
| 68  | louisvuittonoutletinfra.com |
| 69  | louisvuittonoutletsling.com |
| 70  | louisvuittonoutletsuppliers.com |
| 71  | louisvuittonpinterest.com |
| 72  | louisvuittonpretty.com |
| 73  | louis-vuittonprice.net |
| 74  | louisvuittonrabatt.com |
| 75  | louisvuittonsecret.com |
| 76  | louisvuittonservice.com |
| 77  | louisvuittonsfriday.com |
| 78  | louisvuittonsitoufficiale.biz |
| 79  | louisvuittonspecilizeoffertoyou.com |
| 80  | louisvuittonstorede.com |
| 81  | louisvuittonstoreonlinesale.com |
| 82  | louisvuittonstorev.com |
| 83  | louisvuittonsum.com |
| 84  | louisvuitton-tassen.nl |
| 85  | louisvuittonuk.com |
| 86  | louisvuittonukstore.info |
| 87  | louisvuittonungo.com |
| 88  | louisvuittonvuitton.net |
| 89  | louisvuittonwalletshop.com |
| 90  | lovebuylouisvuitton.com |
| 91  | lowlouisvuitton.com |
| 92  | lululvv.com |
| 93  | luxurylvs.com |
| 94  | lv2bags.com |
| 95  | lv4ulv.com |
| 96  | lvalmamall.com |
| 96  | lvalmamallc.com |
| 97  | lvbagsusa.org |
| 98  | lvbolso.com |
| 99  | lvfriday.com |
| 100 | lvhandbags2014.org |
| 101 | lvlowprice.com |
| 102 | lvlvip.com |

| 103 | lv-official.com |
| 104 | lvoutletsforsale.com |
| 105 | lvoutletus.com |
| 106 | lvsaleclub.com |
| 107 | lvsgprice.com |
| 108 | lvtaschen.co |
| 109 | lvtaschens.com |
| 110 | nicelvs.com |
| 111 | nicestlouisvuitton.co.uk |
| 112 | nordstromlouisvuitton.org |
| 113 | officiallouisvuittonstore.com |
| 114 | officiallylouisvuittonshop.com |
| 115 | officialouisvuitons.com |
| 116 | officieelouisvuittons.com |
| 117 | outletlvs.com |
| 118 | prettylvbags.com |
| 119 | prettylvs.com |
| 120 | replicabolsalouisvuitton.com |
| 121 | replicalouisvuittongoods.com |
| 122 | saclouisvuittonfemme.fr |
| 124 | saclouisvuittonsoldes2014.fr |
| 125 | salelouisvuittonoutlets.com |
| 126 | shoplouisvuitton.it |
| 127 | soldes-lv.fr |
| 128 | topcheaplouisvuitton.com |
| 129 | ufficialelouisvuittonshop.it |
| 130 | uslouisvuitton.com |
| 131 | uslouisvuittonus.com |
| 132 | vipbolsoslouisvuitton.com |
| 133 | viplouisvuitton.de |
| 134 | viplouisvuittononline.com |
| 135 | viplouisvuittonshop.com |
| 136 | vipsaclouisvuitton.com |
| 137 | vuittonpaschers.fr |