UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-61698-CIV-GAYLES

LOUIS VUITTON MALLETIER, S.A.,

       Plaintiff,

vs.

2013LVSHOP.COM, *et al.*,

       Defendants.
_____/

## DECLARATION OF STEPHEN M. GAFFIGAN IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Stephen M. Gaffigan, state and declare as follows:

1. I am an attorney duly authorized and licensed to practice law before all courts in the State of Florida and the Southern District of Florida. I am counsel of record for Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton"). I submit this declaration in support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application for TRO"). I am personally knowledgeable of the matters set forth in this declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

2. Prior to filing this action, my firm accessed the commercial Internet websites operating under Defendants' partnership or unincorporated association names identified on Schedule "A" attached to Plaintiff's Application for TRO (the "Subject Domain Names").[1] The

---

[1] The Internet websites operating under the Subject Domain Names louisvuittonfre.com (Defendant Number 49) and saclouisvuittonfrancee.com (Defendant Number 123) identified in Louis Vuitton's Complaint were operational at the time Louis Vuitton's conducted its initial investigation of Defendants. However, the Internet websites operating under those domain names are currently not operational. Accordingly, Louis Vuitton is not requesting immediate equitable relief as to the Internet websites operating under the domain names louisvuittonfre.com and

websites advertise, offer for sale, and/or promote products bearing various counterfeits of Louis Vuitton trademarks at issue in this action.  Each website appears to be fully interactive and appears to allow users to browse the online stores for products bearing Louis Vuitton's trademarks, add products to the online shopping carts, proceed to a point of checkout, and otherwise actively exchange data with the websites.  True and correct copies of the relevant web pages my firm captured reflecting samples of the Internet websites operating under the Subject Domain Names are attached hereto as Composite Exhibit "A."  My firm also captured and downloaded relevant web pages from various websites operating under the Subject Domain Names illustrating examples of Defendants' infringement of the Louis Vuitton trademarks at issue, and then provided copies of these website captures to Louis Vuitton's representative, Hadrien Huet.  True and correct copies of the web pages captured and downloaded by my firm illustrating examples of Defendant's trademark infringement are included in Composite Exhibit "B" to the Declaration of Hadrien Huet in Support of Plaintiff's Application for TRO.

    3. Louis Vuitton is seeking *ex parte* relief because if it proceeds on normal advance notice to Defendants, the Partnerships and Unincorporated Associations identified on Schedule "A" attached to Plaintiff's Application for TRO (collectively, "Defendants"), prior to seeking to preclude modification of control of the Subject Domain Names by having the registrars lock the same, as requested in the Application for TRO, Defendants, can easily and quickly transfer the registrations for many of the Internet websites operating under the Subject Domain Names or modify registration data and content, change hosts, and redirect traffic to other websites, thereby potentially thwarting Louis Vuitton's ability to obtain meaningful relief and continuing to cause irreparable injury to Louis Vuitton. However, upon entry of a TRO in this matter, my firm will

---

sacllouisvuittonfrancee.com.

notify Defendants, by sending copies of the Application for TRO and supporting papers via e-mail to the e-mail addresses provided by Defendants to the registrars responsible for their respective domain names or the e-mail addresses and/or online submission forms identified on the websites operating under the Subject Domain Names. A true and correct chart summarizing the contact information provided by Defendants to their registrars is attached hereto as Exhibit "B." My firm will also provide a copy of the Order by e-mail to the registrar of record for each of the Subject Domain Names, so that the registrar of record for each of the Subject Domain Names may, in turn, notify each registrant of terms of the Order and provide notice of the locking of the domain name to the registrant of record.

4. I have personal knowledge that under the operating rules of most domain name Registrars, Registrants can easily transfer ownership of domain names simply by submitting an authorization letter and an application form. Defendants involved in domain name litigation easily can, and often will, modify registration data and content, change hosts and redirect traffic to other websites they control. All of these things can happen in a very short span of time after Defendants are provided with notice of a lawsuit.

5. I have learned through multiple prior cases I have filed on behalf of Louis Vuitton and other clients that, upon notice of a lawsuit, counterfeit website owners often immediately set up a redirect for their website which essentially informs a search engine that the website being crawled has permanently moved to another domain and instructs the search engine to divert traffic to the other website. The result is to slingshot the new domains to the top of the search engine results pages by leveraging the Internet traffic to the domains in suit which was built through the illegal use of the plaintiff's trademarks.

6.     Attached hereto as Composite Exhibit "C" are four examples of post-suit redirects captured by my Firm with respect to four domain names, chanelfans.com, yeschanelgifts.com, tick2buy.com, and watches-collection.com, which previously were home to counterfeit websites. As reflected in the Exhibit, after the domain name owners received notice of an action but before the domain names were transferred to the plaintiff through litigation, the owners simply redirected all traffic to new domain names, chanelfan.com, yeschanelgift.com, morncity.com, and replicagood.com, respectively. Accordingly, by the time the plaintiff obtained control of the domain names, all of the value to the counterfeiters had already been diverted to the new domain names, and the plaintiff was left to start over. In short, injunctive relief was rendered almost meaningless by advance notice to the domain name owners that the websites were the subject of a legal action. This case is being filed on an *ex parte* basis to prevent such an injustice from occurring herein.

7.     Attached hereto as Composite Exhibit "D" are true and correct copies of the following unpublished opinions and orders:

   a.   Chanel, Inc. v. chanelbags360sale.com, 14-cv-61549-WPD (S.D. Fla. July 11, 2014);

   b.   Chanel, Inc. v. chanel-bestsell.com, 14-cv-61366-WJZ (S.D. Fla. June 26, 2014);

   c.   Gucci America, Inc. v. 2014watchmodels.com, 14-cv-61260-JEM (S.D. Fla. June 9, 2014);

   d.   Tommy Hilfiger Licensing, LLC v. canadatommyhilfigeroutlet.com, 14-cv-60433-UU (S.D. Fla. Feb. 25, 2014);

   e.   Tiffany (NJ), LLC v. besttiffanysale.com, 14-cv-60114-KMM (S.D. Fla. Jan. 23, 2014);

   f.   Chanel, Inc. v. chanelbagshome.com, 13-cv-23570-PCH (S.D. Fla. Oct. 11, 2013);

  g.  Tiffany (NJ), LLC v. 2103tiffanyaustralia.com, 13-cv-62053-KAM (S.D, Fla. Oct. 1, 2013);

  h.  Acushnet v. onlinegolfsale.us, 13-cv-61895-JIC (S.D. Fla. Sept. 13, 2103);

  i.  Chanel, Inc. v. sacpasschers.com, 13-cv-21843-JLK (S.D. Fla. June 5, 2013);

  j.  Chanel, Inc. v. aaaluxurybelt.com, 13-cv-21684-JAL (S.D. Fla. May 30, 2013);

  k.  S.A.S. Jean Cassegrain v. achatsaclongchamp.com, 13-cv-20579-DLG (S.D. Fla. April 11, 2013);

  l.  Tiffany (NJ), LLC v. 1tiffanyjewelleryau.com, 12-cv-24478-KMW (S.D. Fla. Jan. 15, 2013);

  m.  Louis Vuitton Malletier, S.A. v. Feng, 11-cv-60811-DMM (S.D. Fla. April 25, 2011)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of July, 2014, at Fort Lauderdale, Florida.

_____
Stephen M. Gaffigan